<span>Tevis v. Doe.</span>

*Per Curiam.*—The judgment is affirmed with costs.

*R. Crawford*, for the plaintiff.

*J. Collins*, for the defendant.

---

## Tevis and Another *v.* Doe.

If the party who has paid the consideration for land and is entitled to a deed, has the land conveyed for his use to another, the latter holds the land simply in trust for the former, and it is liable to execution, under the R. S. 1843, upon any judgment against the person for whose use it is held.

Where a judgment-debtor colludes with a third person and procures land to be conveyed to the latter to defraud judgment-creditors, the land is liable, under the R. S. 1843, to execution upon the judgment.

A. became replevin-bail in 1840 upon a judgment against B. A.'s property was afterwards sold upon execution to satisfy the debt. In 1847, A. obtained a judgment against B. for the amount made by the sale of his property, and B.'s land was sold without appraisement to satisfy the same. *Held*, that as there was no law when A. became bail requiring the appraisement of land sold upon execution, the sale of B.'s land without appraisement was right.

ERROR to the *Rush* Circuit Court.            *Saturday, November 29.*

PERKINS, J.—Ejectment by *Doe* on the demise of *Fletcher Tevis*, jun., for nineteen and a half acres of ground, being a part of the north-east quarter of section 19, &c., in *Rush* county. *Andrew Colliver* and *Joel Tevis* were admitted defendants. They entered into the usual consent-rule, and put in the plea of not guilty. The cause was tried by the Court, without a jury, and there were a finding and a judgment for the plaintiff.

It was shown in evidence that the legal paper title to the land in question, was in *Andrew Colliver;* that it was conveyed to him on the 3d day of *May*, 1847, by *George*

Nov. Term,
1851.

TEVIS
v.
DOE.

*Hewitt*, and wife, in whom it then was; but, on the part of the plaintiff below, it was shown that said *Hewitt* had sold the land by contract, in 1844 or 1845, to *Joel Tevis*, received the greater part, if not all, of the purchase-money, and put him in possession; that in the spring of 1840, a judgment was rendered in favor of one *Sewell* against said *Joel* and one *Fletcher Tevis*, which judgment was stayed by *John D. Tevis* as bail; that said *John D. Tevis's* property was sold on execution to satisfy said judgment, and that on the 29th of *April*, 1847, four days before the land in question was deeded to *Colliver*, said *Tevis* obtained a judgment, on motion, awarding execution in his favor against said *Joel* and *Fletcher Tevis* for 227 dollars, the amount made out of his property as their replevin-bail; that, at that time, *Joel Tevis* had a bill in chancery pending against said *Hewitt* in the *Rush* Circuit Court, to compel the execution of a deed for said land from said *Hewitt* to said *Joel Tevis;* and that after said judgment in favor of *John D. Tevis* against said *Joel* and *Fletcher* was rendered, an arrangement took place between said *Joel*, *Hewitt*, and *Colliver*, pursuant to which said *Hewitt* deeded said land to *Colliver*, and not to said *Joel*. *John D. Tevis*, believing that that conveyance was fraudulent, had his execution, on his above-mentioned judgment, levied on said land, by virtue of which levy the land was sold as the property of *Joel Tevis*, by the sheriff of *Rush* county, on the 18th day of *September*, 1847, and deeded to *Fletcher Tevis*, jun., the lessor of the plaintiff below.

Upon the trial in the Circuit Court, the conveyance to *Colliver* was decided to be fraudulent, and the land was held to have passed by the sheriff's sale to said *Fletcher Tevis*, jun.

The first question made in this Court, is whether the proof shows the conveyance of the land to *Colliver* to have been fraudulent. We shall not incorporate the evidence upon this point in our opinion. The question was for the jury, or the Court discharging the function of the jury; and such is the evidence, that, had the finding been

either way, we could not, by the rules of law, have disturbed it. It could, therefore, form no precedent, even were the evidence set out, in future circuit trials, in aid of correct verdicts.

Next, the position is taken that, admitting the conveyance to have been fraudulent, this is not a case within the provisions of the statute of frauds in reference to the sale of lands on execution.

Our statute (R. S. p. 453, s. 1,) enacts, among other things, that "lands, tenements, and hereditaments, fraudulently conveyed with intent to defeat, delay, or defraud creditors," and such as are "holden by any one in trust for or to the use of another," shall be liable to be sold on execution, &c. Now, if *Joel Tevis* had fully paid the consideration for this land to *Hewitt*, and was entitled to a deed, but had the same conveyed for his use to *Colliver*, *Colliver* held the land simply in trust for said *Joel*, and it was subject to the execution in this case. See *Bogart* v. *Perry*, 1 John. Ch. R. 52. And if said land was conveyed to *Colliver*, by the procurement of said *Joel*, "with intent to defraud" said *John D. Tevis* out of his judgment, and said *Colliver* was a party to the fraud, then, without regard to the question of the payment of the consideration, the land was subject to the execution. These questions were for the jury, as to the facts.

It is next objected that the land was sold without appraisement. *John D. Tevis* became bail on the judgment in question, in 1840. That, therefore, is the date of the contract out of which the liability of *Joel* and *Fletcher Tevis* to him arose; and we think it right that he should have the advantage of the law of that date. That law required no appraisement.

On the trial, *Colliver*, with a view to show that he had paid something to *Joel Tevis* for the land conveyed, proved that he had, as replevin-bail, been compelled to pay a judgment for said *Tevis*. The plaintiff, in rebutting, proved, by *A. W. Hubbard*, that soon after *Colliver* paid said judgment, he employed said *Hubbard* to sue a constable for some neglect in regard to its collection, and that

the constable and his sureties compromised with *Colliver* and paid him within 15 or 16 dollars of the amount he had paid on said judgment.

This evidence was objected to on two grounds: 1. Because the proceedings in said suit against the constable were not given in evidence; and, 2. That if the constable and sureties did pay back the money to *Colliver*, it was his gain, and *Tevis* had no right to the benefit of it.

As to the first objection, it is a sufficient answer to say that it does not appear that any suit was instituted against the constable; and, further, if there was, the money was not collected by means of a judgment in the suit, but was paid on a compromise, perhaps a verbal one, independent of the suit, and there could be no objection to proving such a compromise by parol and the amount paid upon it.

As to whether *Tevis* had a right to the benefit of that payment, or not, there is nothing on the record showing us what the neglect of the constable, on account of which he paid the money, was. If it was such as gave *Tevis* a right of action against him, and *Colliver* having paid the judgment, availed himself, by the consent of *Tevis*, or otherwise, of that right, *Tevis* should have the benefit of the amount collected. It may have been such a case.

*Per Curiam.*—The judgment is affirmed with costs.

*R. S. Cox, J. Perry,* and *E. Coburn,* for the plaintiffs.

*J. S. Newman,* for the defendant.